# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

KEVIN FOLTA, Ph.D.,

    Plaintiff,                                   Case No.: 1:17-cv-00246-MW-GRJ

v.

THE NEW YORK TIMES COMPANY
and ERIC LIPTON,

    Defendants.

_____/

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR FINAL SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

Table Of Authorities ...................................................................... ii

Reply Memorandum  ......................................................................1

I.    Plaintiff Continues To Urge Unreasonable Readings Of The Article.............1

II.   Plaintiff's Response Includes Both Concessions & Misstatements................3

III.  Plaintiff Misstates Various Points Of Law ......................................................6

      A.    Florida's Privilege Does Not Require Reporting On 4,500+ Emails ...6

      B.    The Fair Report Privilege Applies To Plaintiff's Email Communications........................................................................7

      C.    Plaintiff's Misreads The Law Regarding the Time-Barred Statements ...........................................................................11

      D.    This Court Can Address The "Of And Concerning" Defect..............13

IV.  Conclusion ................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Alan v. Palm Beach Newspapers, Inc.</u>,
  973 So.2d 1177 (Fla. 4th DCA 2008)................................................................ 8

<u>Bay Cty. School Bd. v. Pub. Emp. Relations Comm'n</u>,
  382 So.2d 747 (1st DCA 1980) ...................................................................... 10

<u>Becker v. UCF Bd. Trs.</u>,
  2014 WL 1499515, (Fla. Cir. Ct. 2014) ........................................................ 10

<u>Braddy v. State</u>,
  219 So.3d 803 (Fla. 2017) .............................................................................. 10

<u>Canonico v. Callaway</u>,
  26 So.3d 53 (Fla. 2d DCA 2010)..................................................................... 12

<u>Carson v. News-Journal Corp.</u>,
  790 So.2d 1120 (Fla. 5th DCA 2001).............................................................. 6

<u>Church of Scientology Int'l v. Behar</u>,
  238 F.3d 168 (2d Cir. 2001) .......................................................................... 14

<u>Dean v. Dearing</u>,
  561 S.E.2d 686 (Va. 2002) ............................................................................. 14

<u>Edward L. Nezelek, Inc. v. Sunbeam Television Corp.</u>,
  413 So.2d 51 (Fla. 3d DCA 1982)............................................................ 11, 12

<u>Grapski v. City of Alachua</u>,
  31 So.3d 193 (Fla. 1st DCA 2010) ................................................................. 10

<u>Intihar v. Citizens Info. Assocs., LLC</u>,
  2014 WL 842464 (M.D. Fla. Mar. 4, 2014) ................................................... 12

<u>Jones v. Cmty. Newspapers, Inc.</u>,
  2006 WL 2507610 (M.D. Fla. Aug. 29, 2006)................................................ 13

Miami Herald Media Co. v. Sarnoff,
   971 So.2d 915 (Fla. 3d DCA 2007) ....................................................... 10

Miami Herald Publ'g Co. v. Tornillo,
   418 U.S. 241 (1971) ............................................................................... 7

Mich. United Conservation Clubs v. CBS News, Div. of CBS, Inc.,
   665 F.2d 110 (6th Cir. 1981) ................................................................ 14

New York Times Co. v. Sullivan,
   376 U.S. 254 (1964) .............................................................................. 13

Ortega v. Post-Newsweek Stations, Fla.,
   510 So.2d 972 (Fla. 3d DCA 1987) ........................................................ 7

Pietri v. State,
   885 So.2d 245 (Fla. 2004) .................................................................... 10

Rasmussen v. Collier Cty. Publ'g Co.,
   946 So.2d 567 (Fla. 2d DCA 2006) ..................................................... 7, 8

Shevin v. Byron, Harless, Schaffer, Reid and Assocs., Inc.,
   379 So.2d 633 (Fla. 1980) .................................................................... 10

Sloan v. Shatner,
   2018 WL 3769968 (M.D. Fla. June 22, 2018) ...................................... 13

State v. City of Clearwater,
   863 So.2d 149 (Fla. 2003) ...................................................................... 9

Stewart v. Sun Sentinel Co.,
   695 So.2d 360 (Fla. 4th DCA) ................................................................ 8

Thomas v. Jacksonville Television, Inc.,
   699 So.2d 800 (Fla. 1st DCA 1997) ..................................................... 13

Three Amigos SJL Rest., Inc. v. CBS News Inc.,
   132 A.D.3d 82 (N.Y. App. Div. 2015) ................................................. 14

Turner v. Wells,
  879 F.3d 1254 (11th Cir. 2018) ............................................................................ 6

Woodard v. Sunbeam Television Corp.,
  616 So.2d 501 (Fla. 3d DCA 1993) .................................................................. 7, 8

## **Statutes**

§ 119.011(12), Fla. Stat. (2018) .............................................................................. 9

§ 770.01, Fla. Stat. (2018) ..................................................................................... 12

## **Other Authorities**

2 SACK ON DEFAMATION: LIBEL, SLANDER AND RELATED PROBLEMS
  § 16.2.1 at 16-4 ..................................................................................... 13

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(D), Defendants The New York Times Company ("NYT"), and Eric Lipton (collectively, "Defendants") file this reply to Plaintiff's August 16, 2018 Amended Response (ECF 74, the "Response") to Defendants' Motion for Final Summary Judgment (ECF 65, the "Motion") as to the remaining defamation/false light[1] count in the Amended Complaint (ECF 19, the "Complaint").

## REPLY MEMORANDUM

Plaintiff attempts to keep his Complaint alive by relying on a tortured reading of the Article, ignoring large parts of it, and trying to pass off plain falsehoods, even as he concedes the truth of many of the statements he has challenged. He fares no better on the law. The fair report privilege does apply to his emails, he cannot raise time-barred statements, and he is wrong to suggest this Court cannot decide the "of and concerning" defense on summary judgment.

## I.    PLAINTIFF CONTINUES TO URGE UNREASONABLE READINGS OF THE ARTICLE.

This Court has expressed "reservations" about allowing this case to proceed (ECF 34), described Plaintiff's allegations as replete with "hyperbole" and

---

[1] Plaintiff now concedes he is not asserting an independent false light claim. Response,p.45. (*Note: citations to Response page numbers correspond to the page numbers at the bottom of the document*).

"editorializing" (ECF 35), and found certain discovery requests "laughable" (ECF 57). Counting the original Complaint, Amended Complaint, Opposition to the Motion to Dismiss, Joint Report, and now the 110-page Response, Plaintiff has had five opportunities to explain to this Court exactly how the Article chronicled his interactions with industry in an actionable way. He has not.

Instead, this Court's advice that Plaintiff "step back [and] take a deep breath" (ECF 57), and focus his arguments has gone unheeded. As revealed through Plaintiff's own (and others') emails, the Article chronicled how the biotechnology and organics industries cultivated relationships with academic scientists to advance their respective messaging regarding GMO and organic food products. But because Plaintiff cannot dispute the plain language of his own communications documenting his industry interactions, the Response reverts to a familiar refrain, urging this Court to: (1) not read the Article as a whole, disregarding all portions that refute Plaintiff's allegations; (2) impart strained negative implications/motivations into the Article, no matter how far-fetched; and (3) accept Plaintiff's explanations of what the underlying records *really* mean, despite what they say. What Plaintiff urges this Court to do runs contrary to the Article's words, the supporting source documents provided to readers, and the governing law. A reasonable reading of the Article, the fundamental starting point in any defamation case, supports summary judgment.

## II.   PLAINTIFF'S RESPONSE INCLUDES BOTH CONCESSIONS & MISSTATEMENTS.

Though buried in hyperbole, Plaintiff nonetheless concedes a number of relevant facts.  For example:

- Plaintiff admits he twice signed his name to pre-drafted answers posted to the GMOAnswers website.  Response,pp.87-88.[2]

- Plaintiff does not refute that Monsanto provided him $25,000 to  promote GMO science (Response,p.9, where Plaintiff calls it a "grant"), or that Monsanto paid his travel-related expenses to visit the company's headquarters (Response,p.87).[3]

---

[2] Plaintiff also disingenuously asserts that Monsanto had no association with GMOAnswers.  However, GMOAnswers' website reveals it is funded by the Council for Biotechnology Information ("CBI"), and lists CBI member Monsanto and several other biotechnology companies.  See https://gmoanswers.com/about; https://www.councilforbiotech.org/about-cbi/ (visited Aug. 21, 2018).  Plaintiff similarly attempts to distance himself from industry by noting many of his interactions were with Ketchum.  Plaintiff's emails show that Ketchum was the hired public relations interface for GMOAnswers, operating on CBI's behalf. ECF 64-9,pp.10-11.

[3] Plaintiff claims that Monsanto itself did not pay for his travel, but the very groups that did are all industry-backed advocacy associations.  For example, the group that paid for Plaintiff's 2013 Hawaii trip to appear before a legislative committee, the Hawaii Crop Improvement Association, is an association whose members include Monsanto and Dow.     See http://www.bettercropshawaii.com/home/the-hcia-team/what-is-the-hcia/ (visited Aug. 21, 2018).  The first three entries on Plaintiff's "Transparency Report" note HCIA paid for his $4,000+, seven-day Hawaii trip. See https://www.dropbox.com/s/l0oab4j5l7sjcg5/180420%20Folta%20total%20outreac *…footnote continued on next page*

- Plaintiff admits his grant proposal states he will discuss industry products and what problems they can solve.  Response,pp.8-10.

- Plaintiff concedes UF provided records to Mr. Lipton in response to his public records request.  Response,p.6.

- Plaintiff concedes his presentations acknowledge he produced the email source records in response to public records requests.[4]  Response,p.7.

- Plaintiff admits that words like "skunk" cannot be taken literally. Response,p.82.

Though not an exhaustive litany of Plaintiff's admissions buried in rhetoric, these examples alone confirm key facts in the Article, the application of the privilege to report on records provided by government, and that the "skunk" statement is nonactionable opinion.

---

h.pdf?dl=0 (visited Aug. 21, 2018).  Further, Plaintiff's Pennsylvania legislative trip was paid for by the Biotechnology Industry Organization (now the Biotechnology Innovation Organization), whose members include Monsanto and others biotechnology companies.  See  https://www.bio.org/about; https://www.bio.org/bio-member-directory (visited Aug. 21, 2018).

[4] While what Plaintiff said, rather than the number of times he has said it, is what is salient, he argues that because Defendants provided a single slide among thousands to demonstrate this point it should be ignored.  In reality, as Plaintiff surely knows, that same slide appeared in multiple presentations.  Defendants did not feel it necessary to file duplicative evidence, but are glad to do so if the Court desires. Plaintiff makes similar arguments with respect to additional slides Defendants cite (Response,p.17).  They too show up in multiple presentations.

Moreover, Plaintiff asserts demonstrable untruths.  For example, Plaintiff states that all of his visits to legislative and regulatory bodies preceded the $25,000 from Monsanto.  (Response, p.49)  Not so.  The grant was awarded on August 8, 2014.  ECF 64-9,p.110.  He traveled to Pennsylvania to testify on October 6, 2014.  ECF 64-9,pp.125,130.  He appeared before Congressional personnel in Washington, D.C. to advocate for GMOs and against labeling on June 25, 2015.  ECF 64-9,pp.160-61.

Plaintiff then ignores the full context of the Article, instead stringing together disparate portions of the Article to invent a narrative, while ignoring what the Article actually reports on both industries and Plaintiff.  This includes, for example: (1) Monsanto's recognition that employing academic "white hats" was an effective communications strategy to sway the public and lawmakers; (2) the organics industry employing academics for the same purpose; (3) Plaintiff receiving no personal compensation for any testimony/outreach, and that there was no evidence his research was compromised; (4) Plaintiff refuting the "unfair" tool criticism and that every point he makes is based on evidence; and (5) Plaintiff's belief that GMOs are safe and beneficial.

Reviewing the Article can only lead to the conclusion that it was an accurate accounting of how the biotechnology and organics industries cultivated relationships with academia to advance their respective messaging.  And it is

thoroughly supported in the underlying UF records published for readers to review. Plaintiff's continued attempt to twist the facts must end; it is now proper to summarily dispose of this case.  See Turner v. Wells, 879 F.3d 1254 (11th Cir. 2018)(affirming dismissal on opinion, lack of false statement or defamatory implication, and lack of actual malice grounds).

## III.   PLAINTIFF MISSTATES VARIOUS POINTS OF LAW.

### A.   Florida's Privilege Does Not Require Reporting On 4,500+ Emails.

Plaintiff argues that, for the fair report privilege to apply, the Article must recount some 4,500+ emails received from UF.  Response,pp.23-27.   That is not the law.

As explained in Carson v. News-Journal Corp., the privilege protects a journalist's right to accurately report on even portions of the same government record, and is not destroyed because other information contained in that or other records is omitted (even if such latter information further explains the information reported).  See Carson v. News-Journal Corp., 790 So.2d 1120, 1122 (Fla. 5th DCA 2001)(privilege applied to article on portion of worker's compensation report that failed to mention Carson received benefits).  Moreover, the privilege applies even if the underlying information in a record is inaccurate because it is only the publisher's *summary of the contents* of the information that must be accurate and a journalist has no duty to independently determine the accuracy of statements in

government records.  See Woodard v. Sunbeam Television Corp., 616 So.2d 501, 502 (Fla. 3d DCA 1993); Ortega v. Post-Newsweek Stations, Fla., 510 So.2d 972, 976 (Fla. 3d DCA 1987).

Plaintiff's contention that Defendants must report on the entirety of the UF records provided would lead to reporting impracticalities (especially when, as here, voluminous records are received), undermine the purpose of the privilege, and conflict with a journalist's right to determine what is relevant to publish.[5]  It would, for example, restrict the ability to report on an opinion of this Court without also reporting on all other filings in the matter.  It must be rejected.[6]

**B.**     **The Fair Report Privilege Applies to Plaintiff's Email Communications.**

The sole consideration in determining whether the fair report privilege applies is whether the records reported on were disclosed by government.  See Rasmussen v. Collier Cty. Publ'g Co., 946 So.2d 567, 570 (Fla. 2d DCA

---

[5] See Miami Herald Publ'g Co. v. Tornillo, 418 U.S. 241, 258 (1971)("The choice of material to go into a newspaper…and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment…).  Tellingly, the Response does not cite even one of the purportedly 96% of UF records Defendants did not report on to refute what was published about the alleged 4%.

[6] Contrary to Plaintiff's argument (Response,p.25), Defendants have specifically cited to a wealth of record evidence (including by highlights, page number, quotes, and summaries) supporting the Article.  Should the Court desire, Defendants can provide more detailed comparisons of the challenged statements to the supporting records.

2006)(media "has a qualified privilege to report accurately on information received from government officials"); <u>Alan v. Palm Beach Newspapers, Inc.</u>, 973 So.2d 1177, 1180 (Fla. 4th DCA 2008)(citing <u>Rasmussen</u>); <u>Woodard</u>, 616 So.2d at 502 ("The news media has been given a qualified privilege to accurately report on information they receive from government officials."); <u>Stewart v. Sun Sentinel Co.</u>, 695 So.2d 360, 362 (Fla. 4th DCA)(quoting <u>Woodard</u>).  Plaintiff concedes that fact and for purposes of applying the privilege this Court's inquiry ends there.

Nonetheless, Plaintiff insists that application of the privilege hinges on whether his emails constitute "public records" under Florida law.  Even were this Court to credit that erroneous view, it is beyond doubt that his emails so qualify. Plaintiff repeatedly invokes and acknowledges his land-grant university duties: (1) educating the public about biotechnology; (2) integrating with industry; (3) participating in industry-sponsored communication campaigns like GMOAnswers; and (4) testifying before governmental bodies.[7]  Response,pp.3-4.  Plaintiff also concedes that his job duties require him to seek outside funding for "outreach" activities.  ECF 64-41,p.2.  His emails directly document these very duties. Beyond being provided by government—which alone suffices for purposes of

---

[7] Plaintiff continues to refute that he engaged in "lobbying."  Yet, the same dictionary he cites in the Response (p.60) defines "lobby" to mean exactly what he did: to "[s]eek to influence (a legislator) on an issue."  <u>See</u> https://en.oxforddictionaries.com/definition/lobby (visited Aug. 20, 2018).

applying the privilege—it would also attach under Plaintiff's mistaken, alternative theory.

To distract from the reality that his emails communicate knowledge directly related to his admitted official duties, Plaintiff cites a string of cases that have no bearing on this matter. Response,pp.20-22. First, <u>State v. City of Clearwater</u> clearly recognized that emails qualify as public records so long as they meet the statutory definition of a "public record."[8] <u>See State v. City of Clearwater</u>, 863 So.2d 149, 152-53 (Fla. 2003). The narrow issue rejected there was the argument that simply storing concededly private emails—that is, ones, unlike here, that in no way relate to agency business—on an agency computer system rendered an otherwise private email public. <u>See id.</u> at 154-55 ("determining factor is the nature of the record, not its physical location").

Plaintiff also places perplexing import on a line of cases discussing "precursor" records that are never circulated or intended to document agency knowledge. Response,p.21. They have no application here. Moreover, applying their holdings would lead to the obvious conclusion that exchanged email communications documenting Plaintiff's official duties qualify as public records.

---

[8] Records "made or received…in connection with the transaction of official business" of any agency constitute public records. § 119.011(12), Fla. Stat. (2018).

The cited <u>Shevin</u> rejects the notion that only final version, formal agency reports constitute "final evidence" of agency action and therefore constitute public records. <u>See</u> <u>Shevin v. Byron, Harless, Schaffer, Reid and Assocs., Inc.</u>, 379 So.2d 633, 640 (Fla. 1980).  Indeed, even memoranda to the file and non-final drafts circulated to others are public records because they relate to official business and are intended "to perpetuate, communicate, or formalize knowledge of some type."[9]  <u>See</u> <u>id.</u>

Plaintiff's reliance on <u>Braddy v. State</u>, 219 So.3d 803 (Fla. 2017), <u>Pietri v. State</u>, 885 So.2d 245 (Fla. 2004), and <u>Becker v. UCF Bd. Trs.</u>, 2014 WL 1499515, (Fla. Cir. Ct. 2014) is equally puzzling.  Response,pp.21-22.  <u>Braddy</u> and <u>Pietri</u> stand for the unremarkable points that neither notes nor records not made/received by an agency constitute public records.  <u>Becker</u> deals with records deemed to be in the custody of a private academic journal entity that was not acting for a public agency.  None is relevant to email communications and other records connected to a university chair's acknowledged duties.

---

[9] Numerous cases apply this principle.  <u>See, e.g.</u>, <u>Grapski v. City of Alachua</u>, 31 So.3d 193, 196-97 (Fla. 1st DCA 2010)(minutes created following meeting were not "private" under <u>Shevin</u> even though they would not be formally considered/adopted until subsequent meeting); <u>Miami Herald Media Co. v. Sarnoff</u>, 971 So.2d 915, 917 (Fla. 3d DCA 2007)(memorandum prepared by city commissioner summarizing meeting addressed to "The File" was public record); <u>Bay Cty. School Bd. v. Pub. Emp. Relations Comm'n</u>, 382 So.2d 747, 748, n.1 (1st DCA 1980)(work sheets prepared to assist school board in developing budget met <u>Shevin,</u> as they "were intended as final evidence of the knowledge to be recorded, and were not mere precursors of governmental records").

Plaintiff's UF email communications with third parties, provided to Mr. Lipton by government in response to a public records request, document his land-grant duty interactions with industry, and are communications that formalize and perpetuate the same. While, again, this Court need not reach the issue of whether they are public records for purposes of the privilege, they undoubtedly are.

### C. Plaintiff Misreads The Law Regarding The Time-Barred Statements.

Again, many of the statements Plaintiff places at issue are time-barred because they were never included in his 770.01 demand letter and/or the Complaint. The two-year statute of limitations has run.

Yet, Plaintiff asserts that his demand and complaint may be imprecise, as long as Defendants understood the "gist" of his many complaints. Response,pp.40-45. Further, Plaintiff claims the Court must permit him to amend his Complaint to add these new statements—outside the limitations period. Response,pp.40-45. He is wrong on both fronts.

Plaintiff relies heavily on Edward L. Nezelek, Inc. v. Sunbeam Television Corp., 413 So.2d 51 (Fla. 3d DCA 1982), but wholly misunderstands the case. Nezelek involved issues about whether Nezelek's complaint sufficiently reflected what was complained of in his pre-suit notice demand. In that case it was deemed error not to allow Nezelek to amend his demand and/or complaint to conform it to his demand See id. at 56-57. What Plaintiff fails to mention is, at the time of the

trial court's error, Nezelek could have cured those deficiencies well within the applicable two-year statute of limitations.  Plaintiff here can no longer comply with § 770.01 nor amend his complaint to add new statements not sued upon because the two-year statute of limitations ran on September 6, 2017.  See § 770.01, Fla. Stat. (2018); Canonico v. Callaway, 26 So.3d 53 (Fla. 2d DCA 2010).

Plaintiff tries to argue that the relevant date in Nezelek was the date of the *appellate* court's decision (occurring more than two years after the subject publication).  See id. at 50.  Such a misreading would expand the statutory limitations period for any defamation claim, directly conflict with the express specificity requirements found in § 770.01, and undermine the statute's purpose of allowing publishers to correct or retract a challenged statement.  Plaintiff had ample opportunity to lay bare all the statements from the Article that he intended to sue upon in his demand letter and Complaint (and he did sue on numerous statements) but has now simply run out of time.  See Intihar v. Citizens Info. Assocs., LLC, No. 2:13-cv-720-FtM-29CM, 2014 WL 842464, at *3 (M.D. Fla. Mar. 4, 2014)("If sufficient time remains for compliance [with a statutory condition precedent], dismissal is without prejudice and with leave to cure; otherwise, dismissal is with prejudice…Florida law is clear that "[f]ailure to comply with the notice provision of section 770.01 requires dismissal of the

complaint for failure to state a cause of action."). All statements identified in the Motion as time-barred must be dismissed.

**D.    This Court Can Address The "Of And Concerning" Defect.**

While admitting he is not identified in certain statements, Plaintiff argues this Court cannot resolve the "of and concerning" issues raised. Response,pp.38-40. Yet, "courts routinely consider, on motions…issues such as…whether [a statement] is 'of and concerning' the plaintiff…and they frequently grant motions on these grounds and others." Hon. Robert D. Sack, 2 SACK ON DEFAMATION: LIBEL, SLANDER AND RELATED PROBLEMS § 16.2.1 at 16-4–16-5 (5th ed. 2017). As noted in the Motion, whether a statement is "of and concerning" a plaintiff is of constitutional magnitude and not a jury question when no reasonable person would conclude otherwise. See New York Times Co. v. Sullivan, 376 U.S. 254, 288-89 (1964)(evidence presented was incapable of any interpretation that could lead jury to conclude article was about Sullivan).

Accordingly, Florida courts grant pre-trial motions when statements are not "of and concerning" a plaintiff. See Thomas v. Jacksonville Television, Inc., 699 So.2d 800, 805 (Fla. 1st DCA 1997); Jones v. Cmty. Newspapers, Inc., No. 3:05-cv-240-J-16MMH, 2006 WL 2507610, at *3 (M.D. Fla. Aug. 29, 2006); Sloan v. Shatner, No. 8:17-cv-332-T-27AAS, 2018 WL 3769968, at *6 (M.D. Fla. June 22,

13

2018).  So do courts nationwide.[10]

Seven statements that discuss *Dr. Benbrook and Dr. Shaw* are not "of and concerning" Plaintiff.  Plaintiff's strained approach to this entire matter is perfectly encapsulated in his effort to sue on statements naming other people that he believes somehow impugn him.  They must be rejected.

## IV.    CONCLUSION

For these additional reasons, Defendants respectfully request this Court grant them final summary judgment.

Dated: August 23, 2018.

Respectfully submitted,

THOMAS & LOCICERO PL

/s/ *Gregg D. Thomas*
Gregg D. Thomas, FBN 223913

---

[10] See, e.g., Three Amigos SJL Rest., Inc. v. CBS News Inc., 132 A.D.3d 82, 88 (N.Y. App. Div. 2015)("of and concerning" defense can be decided as matter of law, and need not be determined by a jury) aff'd 28 N.Y.3d 82, 87 (2016); Dean v. Dearing, 561 S.E.2d 686, 690 (Va. 2002)("mere conclusory statement that the articles are 'of and concerning' [plaintiff] does not satisfy the pleading requirement of alleging facts upon which relief can be granted"); Church of Scientology Int'l v. Behar, 238 F.3d 168, 173 (2d Cir. 2001)("of and concerning" requirement "should ordinarily be resolved at the pleading stage");  Mich. United Conservation Clubs v. CBS News, Div. of CBS, Inc., 665 F.2d 110, 112 (6th Cir. 1981)("[t]he District Court granted summary judgment against all plaintiffs after viewing the films and concluding as a matter of law that they were not 'of and concerning' plaintiffs. [Plaintiffs] now appeal, contending that the question whether the films were 'of and concerning' them, is a question of fact, precluding summary judgment. We disagree.").

Carol Jean LoCicero, FBN 603030
Mark R. Caramanica, FBN 110581
601 South Boulevard
Tampa, FL 33606
Telephone: (813) 984-3060
Facsimile: (813) 984-3070
gthomas@tlolawfirm.com
clocicero@tlolawfirm.com
mcaramanica@tlolawfirm.com
secondary email addresses:
dlake@tlolawfirm.com
tgilley@tlolawfirm.com

*Attorneys for The New York Times Company and Eric Lipton*

## LOCAL RULE 7.1(F) CERTIFICATION

I HEREBY CERTIFY that the foregoing memorandum of law contains

3,136 words, with such word count incorporating all portions of this document

subject to the limitations imposed under Local Rule 7.1(F).

15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing

document is being electronically filed and will be furnished via CM/ECF and via

electronic mail on August 23, 2018, to:

James J. Evangelista
Bryan D. Hull
Bush Ross, P.A.
1801 North Highland Avenue
Tampa, FL 33602
P.O. Box 3913
Tampa, FL 33601-3913
jevangelista@bushross.com
bhull@bushross.com
osmith@bushross.com
jlantz@bushross.com

James E. Beasley, Jr.
Lane R. Jubb, Jr.
The Beasley Law Firm, LLC
1125 Walnut Street
Philadelphia, PA 19107
Jim.Beasley@BeasleyFirm.com
Lane.Jubb@BeasleyFirm.com
Roseann.Diorka@BeasleyFirm.com
Janet.Volpe@BeasleyFirm.com


/s/ *Gregg D. Thomas*
Attorney

16